United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE COMPLAINT OF TAURUS MARINE, INC.,

    Petitioner,

    v.

MARIN COUNTY, et al.,

    Claimaints.
_____/

No. C 08-3195 PJH

**ORDER GRANTING PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Petitioner's motion for partial summary judgment came on for hearing before this court on February 1, 2012. Petitioner Taurus Marine, Inc. ("Taurus Marine") appeared by its counsel John Cigavic and George Nowell. Claimants Manson Construction Company ("Manson"), Dutra Group, Inc. ("Dutra"), and the Joint Venture of Manson Construction Company and Dutra Group, Inc. ("Joint Venture") (collectively "Manson/Dutra") appeared by their counsel Robert Chiles. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

**BACKGROUND**

Taurus Marine is the owner of the tugboat TERILYN. The TERILYN was hired by Manson/Dutra to work on a project related to dredging the Oakland Harbor and delivering the dredge spoils to Hamilton Field, located on the western shore of San Pablo Bay. The procedure, generally, was that dredges filled barges with mud spoils in Oakland Harbor, and tugs towed those barges to San Pablo Bay to be pumped empty by Dutra's vessel

1 LIBERTY, and then moored the empty barges to a buoy. The empty barges were
2 eventually towed back to Oakland Harbor to be refilled.

3 On January 3, 2008, there was a severe storm with winds from the south-southeast
4 in the San Francisco Bay Area. The storm worsened overnight and during the early
5 morning hours of January 4, 2008. The LIBERTY continued operating as usual throughout
6 the stormy night, and finished emptying mud from the Manson/Dutra barge CK-7. Pursuant
7 to the LIBERTY's standing order, the TERILYN took the empty CK-7 to one of Dutra's
8 mooring buoys, where it was moored using Manson/Dutra's pre-formed and pre-sized line
9 that was attached to the buoy.

10 The fierce weather apparently caused the barge to break the mooring line, and the
11 barge drifted with the wind north-westwards in San Pablo Bay. When the tug PETER M.
12 arrived at the anchorage to remove the CK-7, the barge was nowhere to be seen, and the
13 PETER M. reported it as lost. The CK-7 was eventually located on the rocks, with her stern
14 jammed into McNear's Pier (which extends outward into the Bay from McNear's Beach).[1]
15 This caused some damage to the Pier.

16 The following morning Manson/Dutra personnel took charge, instructing the
17 TERILYN and her crew to assist in the salvage by pulling the barge off the beach while
18 Manson/Dutra personnel maintained the bow firmly attached to a tree. According to Taurus
19 Marine, the Manson/Dutra personnel released the bow line to the barge prematurely. In
20 any event, the barge swung into and further damaged McNear's Pier.

21 On July 2, 2008, Taurus Marine filed the present petition pursuant to The
22 Shipowner's Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501-30512 (formerly 46
23 U.S.C. § 181, et seq.). Taurus Marine seeks exoneration for or limitation of liability, civil
24 and maritime, for all claims for any loss, destruction, or damage arising out of the allision of
25 the CK-7 barge with McNear's Pier on January 4, 2008.

---

[1] McNear's Beach Park and McNear's Fishing Pier are the property of the County of Marin, and are located near the entrance to San Pablo Bay, roughly north of the Richmond-San Rafael Bridge, and across the bay from Point San Pablo and Richmond.

In the petition, Taurus Marine alleged that while it was unaware of any written claims pending against it or against the TERILYN at that time, it believed that the County of Marin had valued the costs of the alleged damage to the Pier at over $1 million. Taurus Marine denied responsibility and claimed exoneration from all liability, but also asserted that should it be held responsible to any party, it (and the TERILYN) claimed the benefit of the limitation of liability as provided in the Limitation of Liability Act.

Also on July 2, 2008, Taurus Marine filed a stipulation providing that International Marine Underwriters/Northern Assurance Co. of North America had agreed to file an undertaking in the amount of $1,001,000, and to act as surety pending the appraisal of the TERILYN. On August 14, 2008, the court approved the stipulation and the notice of exoneration/limitation of claims, and the notice was filed on August 22, 2008.

On September 26, 2008, the County of Marin filed an answer to the petition. Among other things, the County admitted that it valued the costs of repairing the damage to the Pier at over $1 million, but denied knowledge of Taurus Marine's awareness of any written claims. The County asserted two affirmative defenses, alleging unseaworthiness of the TERILYN and/or negligence in operation of the TERILYN, and negligence of Taurus Marine and its agents in mooring the CK-7. The County also alleged claims of negligent mooring and negligent towing of the CK-7 against Taurus Marine, and prayed for damages in the amount of $1,585,000.

On September 29, 2008, Manson/Dutra filed a claim, alleging that the crew of the TERILYN had negligently moored the CK-7, thereby causing damage to the barge ($512,834) and to the Pier. Manson/Dutra also asserted that because there were two incidents – the first one when the barge ran into the Pier, and the second one when the barge struck the Pier as Manson/Dutra and Taurus Marine were attempting to move the barge away from the Pier – there should be two limitation proceedings, because the damage to the Pier could be separately identified from each incident; and also because the limitation fund as established was inadequate.

During the period between October 2008 and December 2009, the parties stipulated

3

and the court agreed to several continuances, to enable the parties to pursue discussions and for the claimants to complete repairs to the McNear's Pier.

At some point thereafter, the Manson/Dutra claimants and Marin County agreed to settle the claim relating to the Pier damage. A settlement agreement was signed by Manson/Dutra on January 27, 2009, and by Marin County on January 30, 2009. This agreement provided that Manson/Dutra would perform all repairs to the Pier, initiate and administer all aspects of preparing the design for the repairs, initiate and obtain all necessary permits for the repairs, and initiate and complete all construction associated with the repairs – all "at no cost to the County."

The agreement further provided that the County would "[r]elease Manson/Dutra in connection with County's claims for the physical damage and repairs to the Pier," "[c]ooperate with Manson/Dutra to help it carry out the [r]epairs," and "[a]ssign to Manson/Dutra all rights of the County against Taurus Marine, Inc., and/or other responsible persons or entities for the physical damage to the Pier."

A second settlement agreement was signed on November 5, 2009. This agreement provided for payment of $55,000 in damages to be paid to the County to cover lost income while the Pier could not be used, as well as to compensate the County for staff time needed to oversee the repairs. Manson/Dutra and its insurers also paid the cost of a marine engineering expert to oversee the repairs on the County's behalf.

On November 25, 2009, Taurus Marine, Manson/Dutra, and Marin County signed a stipulation stating that the County and Manson/Dutra had entered into a settlement to repair the Pier at no cost to the County, and to compensate the County for loss of the Pier and additional expense; that pursuant to the settlement, the claims the County had asserted against Taurus Marine in this proceeding had been assigned to Manson/Dutra; and that as a result of that assignment, the County had agreed to withdraw from the action, and Manson/Dutra intended to "stand in the shoes of the County in this action and assert the County's claims as its own." Taurus Marine stated that it had "no objection to the withdrawal of the County as a claimant in this action, nor to the assertion of the County's

4

claim by Manson/Dutra."

On December 7, 2009, the court signed the proposed order, granting the County's request to withdraw, and dismissing the County as a party to the litigation, and ordering that Manson/Dutra's claim be amended to assert all claims that the County had previously asserted in Taurus Marine's limitation action.

The Manson/Dutra claimants initially estimated the cost to repair McNear's Pier at $1,754,694. The alleged final cost of repairing the Pier was between $3,225,000 and $3,995,000 (or more). The repairs to the Pier are complete, and the Pier reopened to the public in May 2010.

On December 21, 2011, Taurus Marine filed the present motion for partial summary judgment, seeking a ruling that Manson/Dutra is barred from recovering for the damages to McNear's Pier under general maritime law and/or California law and equity.[2]

**DISCUSSION**

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively

---

[2] Taurus Marine does not dispute that Manson/Dutra will be able to continue to prosecute the claim for damage to the CK-7 barge before this court.

5

demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B. Taurus Marine's Motion

Taurus Marine argues that Manson/Dutra is barred from recovering for the Pier damage under the general maritime law, because Manson/Dutra did not obtain a release of Taurus Marine when it settled with Marin County for the damages to McNear's Pier that were caused by CK-7 on January 4, 2008.

The Manson/Dutra claimants were exposed to liability in tort to Marin County, for the Pier damage arising from the January 4, 2008 incident, because under general maritime law, the Louisiana Rule presumes that a vessel in rem is at fault if she comes free of her moorings, drifts, and causes damage (unless the vessel proves that human skill and precaution and a proper display of nautical skill could not have prevented the allision). See The Louisiana, 70 U.S. 164, 173 (1865); Hood v. Knappton Corp., 986 F.2d 329, 331-32 (9th Cir. 1993); Weyerhaeuser Co. v. Atropos Island, 777 F.2d 1344, 1347 (9th Cir. 1985).

Because a tug is neither an "insurer" nor a "bailee" with exclusive control of its tow, even an absent barge owner retains "custody" and "control" of its barge and is directly liable to injured parties under the Louisiana Rule if the barge breaks loose and damages property. See Stevens v. The White City, 285 U.S. 195, 200-203 (1932); Pasco Marketing, Inc. v. Taylor Towing Service, Inc., 554 F.2d 808, 810-11 (8th Cir. 1977).

Manson/Dutra settled its claim with Marin County, and Marin County has been dismissed from the case. Taurus Marine contends that when a party in admiralty settles a tort claim, a non-settling party's liability is limited to their comparative fault/proportionate share of liability, but also asserts that actions for contribution against the settling parties are barred, and neither contribution nor indemnity is permitted by a settling party against a non-settling party that is not released in the settlement.

In other words, Taurus Marine contends that the settlement among the claimants bars any claims they might have against Taurus Marine for the Pier damage, whether through assertion of equitable or other indemnity, contribution, or claims/recovery based on assignment or otherwise.

In opposition, Manson/Dutra asserts that its claim should not be dismissed because of a lack of a document with the word "release" in favor of Taurus Marine. They argue that Taurus Marine is attempting to escape liability entirely by claiming that there is no document by which the County of Marin released it from liability.

Manson/Dutra contends that there is no need to apply such a mechanical test because Taurus Marine has effectively been released from liability by the County of Marin, noting that the County has been made whole, as the Pier has been repaired, and the County also received monetary compensation for lost income and related expenses of Marin has been made whole. Manson/Dutra asserts further that even if the County still had any claim against Taurus Marine, such a claim would be time-barred; that in specifically dismissing its claim, the County granted Taurus Marine the "functional equivalent" of a release; and that whatever claim the County may have had against Taurus Marine has been assigned to the claimants, per the settlement agreement.

Manson/Dutra also argues that the failure to obtain a release is a "technical issue," and that it can be corrected in the future because Marin County has no objection to granting Taurus Marine a release.

For these reasons, Manson/Dutra asserts that there is no reasonable probability that Taurus Marine will be exposed to any claim from the County, and that even if it was, the

1 Joint Venture is entitled to indemnity because of Taurus Marine's breach of its warranty of
2 workmanlike performance.
3   The court finds that the motion must be GRANTED. Under the authority set forth
4 below, the assignment from Marin County to Manson/Dutra is invalid, and Manson/Dutra is
5 barred from seeking contribution or indemnity because it did not obtain a release of Taurus
6 Marine when it negotiated the settlement with Marin County.
7   In 1975, in United States v. Reliable Transfer Co., 421 U.S. 397 (1975), the United
8 States Supreme Court withdrew its century-old "divided damages" rule requiring equal
9 division of damages in maritime cases where both parties were at fault. See id., 421 U.S.
10 at 403-11. The Court held that when two or more parties have contributed by their fault to
11 cause property damage in a maritime collision or stranding, liability for such damage is to
12 be allocated among the parties proportionately to the comparative degree of their fault, and
13 that liability for such damages is to be allocated equally only when the parties are equally at
14 fault or when it is not possible fairly to measure the comparative degree of their fault. Id. at
15 411.
16   Nineteen years later, in McDermott, Inc. v. Amclyde, 511 U.S. 202 (1994), the Court
17 addressed the proper method for calculating liability for nonsettling defendants in admiralty
18 tort cases. The Court analyzed the three principal alternatives, and concluded that the
19 liability of nonsettling defendants in such cases should be calculated with reference to the
20 allocation of proportionate responsibility rather than giving nonsettling defendants a credit
21 for the amount of the settlements obtained by plaintiffs. Id., 511 U.S. at 204. The Court
22 held that this approach was more consistent with the baseline admiralty approach,
23 announced in Reliable Transfer, of dividing damages amongst joint tortfeasors according to
24 the degree of fault. Id., 511 U.S. at 217.
25   Under McDermott, "no suits for contribution from the settling defendants are
26 permitted, nor are they necessary," because nonsettling defendants will pay no more than
27 their share of the judgment, id. at 209 (as determined by the factfinder); see also Boca
28 Grande Club v. Fla. Power & Light Co., 511 U.S. 222, 222-23 (1994) (under general

8

maritime law, actions for contribution against settling parties are barred).

The McDermott Court noted that joint and several liability allows a plaintiff to recover from one of many defendants when a plaintiff's recovery is limited by factors outside the plaintiff's control, such as a defendant's insolvency, thus making other defendants, rather than the innocent plaintiff, responsible for the shortfall. McDermott, 511 U.S. at 220-21. When a settlement occurs, however, the plaintiff's recovery has not been limited by outside forces, but instead by the plaintiff's own decision to settle. Id. at 221. Thus, the court found no reason to allocate a potential shortfall to a non-settling defendant and to allow a plaintiff a double recovery. "Just as the other defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement, . . . so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one." Id.

In 2003, in Murphy v. Florida Keys Elec. Coop. Ass'n, 329 F.3d 1311 (11th Cir. 2003), the Eleventh Circuit held that a defendant in an admiralty tort action who settles with the plaintiff without obtaining a release from liability for other potential defendants, cannot bring a suit for contribution against a nonsettling defendant – even one who was not named as a defendant in a lawsuit at the time of the settlement – unless that defendant was released from liability to the plaintiff by the settlement agreement. Id., 329 F.3d at 1313. "An essential tenet of this [McDermott] approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its proportionate share of the total damages, no more and no less." Id. at 1314.

The court noted that under the "proportionate share" approach adopted by McDermott, contribution actions are not available to settling parties because settling parties assume the finality and potential benefit and risk of their settlement decisions. Id. at 1315-16. The court also noted, however, that McDermott's prohibition against contribution from a settling party does not preclude a contribution suit against a tortfeasor who is released by a settlement, even though not a party to it, as a release is not the same as a settlement, and a released party is not a settling party within the meaning of McDermott (which did not eliminate the maritime rule allowing contribution between joint tortfeasors). Id. at 1318.

9

In 2009, in Ondimar Transportes Maritimos v. Beatty St. Props., 555 F.3d 184 (5th Cir. 2009), the Fifth Circuit held that in a maritime tort case, permitting a tortfeasor to settle with the injured party, and to obtain an assignment from that injured party, and then to proceed against the nonsettling potential tortfeasor, would be inconsistent with the goals of proportionate liability (even though it acknowledged that most state courts permit such assignments). Id., 555 F.3d at 187. The court noted that under the "proportionate share" liability framework for general maritime tort law, a settling tortfeasor is presumed to pay only for his proportionate liability, and the nonsettling defendants get no credit for the amount paid by a settling tortfeasor, even though the plaintiff may ultimately be overcompensated or undercompensated. Id.

In that case, the owner and operator of a vessel that had allided with a dock owned by the Port of Texas City brought an action against the owner and operator of a second vessel that had been at an adjacent dock and was allegedly at fault for the allision, seeking to recover the money paid to the Port to settle its claim for damage to the dock and to recover for damage to the vessel's hull. Although the owner of the first vessel had informed the owner of the second vessel of the Port's claim, it did not include the second vessel in the settlement negotiations. After paying the full amount of the claim, the owner of the first vessel obtained an assignment from the Port of any claims the Port might have against the owner of the second vessel, and sought to recover from the owner of the second vessel the full amount of the claim, either in contribution, indemnity, or by virtue of the assignment.

The Fifth Circuit concluded that permitting such an assignment in a maritime case would allow an easy end-run around McDermott's prohibition of contribution claims between a settling defendant and a co-tortfeasor, and would seriously undermine McDermott's proportionate fault approach to dealing with partial settlement, and also would not further the goals of promotion of settlement and judicial economy. Id. at 188-89. Accordingly, the court invalidated the assignment of the Port's property damage claim to the owner of the first vessel, to the extent that it permitted the first vessel to proceed against the second vessel, an alleged co-tortfeasor. Id.

10

Four months later, in Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc., 567 F.3d 182 (5th Cir. 2009), the Fifth Circuit extended the Ondimar ruling to apply to an assignment of a plaintiff's personal injury claim to one of the potential tortfeasors. The court held that the assignment of an unliquidated personal injury claim to one of the defendants in connection with a settlement agreement was invalid under maritime law because under the proportionate liability framework for general maritime law, a tortfeasor is liable only for his proportionate share of fault. Id., 567 F.3d at 185-86.

The court also observed that where the injured party has released not only the settling tortfeasor but also the non-settling tortfeasor, an action by the settling tortfeasor against the non-settling tortfeasor for contribution is less inconsistent with McDermott's goals than the situation presented in the case before the court, or the situation presented in Ondimar, where the injured party never released the non-settling tortfeasor. Id. at 186. The court noted in addition that "the McDermott advantages of judicial economy and clearer presentation argue in favor of having proportionate fault and the extent of damages determined in one proceeding with all relevant parties present, at least where that is reasonably possible." Id.

Finally, in Combo Maritime, Inc. v. U.S. Bulk Terminal, LLC, 615 F.3d 599 (5th Cir. 2010), the Fifth Circuit clarified that while McDermott's proportionate liability scheme bars a settling tortfeasor from seeking contribution from a non-settling tortfeasor (as stated in Ondimar), and a settling tortfeasor may not seek recovery from a non-settling tortfeasor based on an assignment of the claim by the plaintiff (as stated in Ondimar and Lexington), McDermott does not prevent an action for contribution from a settling tortfeasor who obtains, as part of its settlement agreement with the plaintiff, a full release for all parties (defined by the court as "a release of all potential tortfeasors from liability, regardless of whether the potential tortfeasor is a party to the settlement giving rise to that full release"). Combo, 615 F.3d at 603 & n.2.

While Murphy and the Ondimar/Lexington/Combo line of cases have not been cited by the Ninth Circuit in any reported decision, this court has discovered no contrary authority

11

within in the Ninth Circuit.  Under McDermott/Murphy/Ondimar, Marin County's assignment of its claim against Taurus Marine to Manson/Dutra in the settlement agreement is not valid, because there is no provision in the settlement agreement releasing Taurus Marine from liability to Marin County.  That is, because Manson/Dutra did not obtain a release on behalf of Taurus Marine, it cannot seek contribution from Taurus Marine.

Manson/Dutra argues that it would not be fair to permit Taurus Marine to evade liability simply because Manson/Dutra and Marin County failed to include an explicit "release" in the settlement agreement.  Moreover, as noted above, Manson/Dutra claims that it is not necessary for there to be an explicit "release" provision in the settlement agreement, because Marin County was "effectively released" after the parties entered into the settlement agreement.  However, Manson/Dutra provides no legal authority to support this argument, which in any event runs counter to the Murphy/Ondimar analysis.

It appears that what Manson/Dutra is attempting here is to recoup its own costs of repairing the Pier.  Under the "proportionate share" approach adopted in McDermott and Murphy/Ondimar, settling parties are not entitled to seek contribution or indemnity because settling parties assume the finality and potential benefit and risk of their settlement decisions.  In addition, a settling tortfeasor is presumed to pay only for his proportionate liability, and the nonsettling defendants get no credit for the amount paid by a settling tortfeasor.

Finally, the court disagrees that Manson/Dutra's failure to obtain a release from Marin County is simply a "technical issue."  Rather, under the authority discussed above, it is a legal bar under general maritime law, which bars Manson/Dutra as settling defendants from continuing to litigate against others not released by the settling party (Marin County) for damages to McNear's Pier.

Nor would any "modification" of the settlement agreement be effective, as it would result in the Joint Venture and Marin County creating a new settlement agreement, but that new contract would not change the present settlement agreement or avoid the McDermott litigation bars.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS the motion for partial summary judgment to the extent of finding that the Manson/Dutra claimants have no basis for pursuing a recovery from Taurus Marine for the Pier damage. The court finds it unnecessary to consider Taurus Marine's alternative argument – that Manson/Dutra is not entitled to any recovery because the settlement violated the California Public Contract Code and the Brown Act.

**IT IS SO ORDERED.**

Dated: February 9, 2012

PHYLLIS J. HAMILTON
United States District Judge